O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL PACIFIC, LLC,<br><br>　　　　　Plaintiff,<br>　　v.<br>GOLDBERG AND SOLOVY FOODS INC., et al.,<br><br>　　　　　Defendants. | Case No. 2:10-cv-09288-ODW(SSx)<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION TO CONTINUE PRETRIAL CONFERENCE AND TRIAL [76]** |

Before the Court is Plaintiff's ex parte application to continue the pretrial conference and trial dates from May 21, 2012, and June 12, 2012, respectively, until at least January 2013. (Dkt. No. 76.) Having carefully considered the papers filed in support of and in opposition to Plaintiff's ex parte application, the Court deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C. D. Cal. L. R. 7-15. For the reasons discussed below, the Court **DENIES** Plaintiff's application.

This Court's December 6, 2010 Standing Order establishes that "[e]x parte applications are solely for extraordinary relief and should be used with discretion." (Dkt. No. 5, at 9.) Plaintiff's request for a trial continuance does not seek extraordinary relief and is therefore inappropriate. Plaintiff contends that ex parte relief is necessary because Plaintiff could not have drafted a noticed motion by

1  April 16, 2012, the last date such a motion could have been filed so that it could be
2  heard prior to the pretrial conference.  (Appl. 6.)  However, Plaintiff discovered the
3  information necessitating a continuance during the first week of April.  (Appl. 6.)
4  Plaintiff then drafted and proposed a stipulation to continue the trial date on April 17,
5  and defense counsel did not indicate its unwillingness to stipulate until April 20—the
6  same date that appears on the instant Ex Parte Application.  (*Id.*)  That Plaintiff was
7  able to draft an eight-page ex parte application in a day but could not find time in the
8  nearly two weeks between the first week of April and April 16 to draft a regularly
9  noticed motion is remarkable.  But this is only one example of the foot-dragging
10 characteristic of Plaintiff's prosecution of this case.

11  Plaintiff's application complains in part that John Barberan "was less than
12 cooperative" at his July 11, 2011 deposition.  (Ex Parte Appl. 2.)  A then-cross-
13 defendant in the case, Barberan invoked his "Fifth Amendment right" ad nauseum
14 throughout the deposition because he could not afford an attorney and did not "want to
15 purger [sic]" himself.  (Barberan Depo. 12:2–25; Ex Parte Appl. 2.)  As a result,
16 Plaintiff informed Barberan at the deposition, "It's my present intention to bring the
17 appropriate proceedings to have you cited into court and to explain and to show cause
18 as to why your assertion of the Fifth Amendment is correct.  In that process I'll be
19 asking the court for monetary sanctions . . . ."  (Barberan Depo. 67:24–68:6.)  To date,
20 Plaintiff has not filed a motion to compel Barberan's further testimony, and the
21 deadline to hear a motion to compel was April 23, 2012.  (Dkt. No. 52, at 23.)

22  Plaintiff contends that following the deposition, Barberan informed Plaintiff's
23 counsel that Barberan "had information regarding the entire counterfeit scheme but
24 that he feared disclosing the same while being a party to the case."  (Ex Parte Appl. 2–
25 3.)  On March 28, 2012, Defendant Goldberg and Solovy Foods, Inc. dismissed its
26 cross-claims against Barberan, resulting in Barberan's dismissal from the case.  (Dkt.
27 No. 74.)  Plaintiff now avers that Barberan "has been in contact with plaintiff and has
28

represented that he is willing to cooperate as to his dealings with RFD and stating that he has vital information regarding the counterfeiting scheme." (Appl. 4.)

In light of Plaintiff's insistence that Barberan's "testimony is crucial to its case," the Court is bewildered by Plaintiff's complete failure to seek to compel further testimony from Barberan immediately following his deposition. Plaintiff made it abundantly clear at Barberan's deposition that Plaintiff intended to seek further testimony following Barberan's meritless invocation of the Fifth Amendment right against self-incrimination. This intention should have been amplified by Barberan's revelation directly after his deposition that "he had information regarding the entire counterfeit scheme." Only now—eight months after the deposition, three weeks after the already-extended discovery cutoff date, and on the final date for *hearing* motions—does Plaintiff seek to depose Barberan a second time. Plaintiff is too late.

Plaintiff also seeks to re-open discovery to follow through on information gleaned from Barberan's email accounts, which were produced to Plaintiff on March 26, 2012. Specifically, Plaintiff seeks to subpoena certain business records from cold storage facilities and depose Defendant RFD's principal, Neel Reddy. (Appl. 3, 8.) However, the Court already granted the parties' stipulation to continue the discovery cutoff date from March 12, 2012, to April 1, 2012, in part to allow Plaintiff to depose Neel Reddy on March 28, 2012. (Dkt. No. 72, at 3 ("[S]ubject to court order, the parties have agreed to take . . . the deposition of Neel Reddy on March 28, 2011."); Dkt. No. 73.) On March 27, however, Plaintiff's counsel emailed defense counsel to cancel the deposition, citing only "scheduling conflicts"; Plaintiff made no attempt to reschedule the deposition. (Kayakumar Decl. ¶ 7; Prince Decl. ¶ 8.) Thus, despite the benefit of a continuance, Plaintiff still managed to squander its opportunity to depose Mr. Reddy with no explanation other than "scheduling conflicts." The Court is unwilling to delay this action any further to allow Plaintiff yet another attempt to undertake discovery the Court apparently has no guarantee that Plaintiff will actually undertake.

The tenor of Plaintiff's ex parte application is that its case will be severely disadvantaged as a result of a lack of cooperation from Barberan and Defendants. It appears to the Court, however, that this request for a continuance—inappropriately brought as an ex parte application—is the result of Plaintiff's own failure to conduct discovery diligently. The Court will not grant Plaintiff a continuance for an "emergency" of its own making. Plaintiff's ex parte application is therefore **DENIED**.

**IT IS SO ORDERED.**

April 25, 2012

_____
**HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**